UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MIGUEL VAQUERO BECHARA,

        Petitioner,

v.                                          Case No.: 2:26-cv-00292-SPC-DNF

MATTHEW MORDANT *et al.*,

        Respondents,
_____/

## OPINION AND ORDER

Before the Court are petitioner Miguel Vaquero Bechara's Petition for Writ of Habeas Corpus (Doc. 1), the government's response (Doc. 4), and Vaquero Bechara's reply (Doc. 5). For the below reasons, the Court grants the petition.

**A. Background**

Vaquero Bechara is a native of Cuba. He entered the United States as a refugee on August 5, 1968, when he was eleven years old. Vaquero Bechara was later granted lawful permanent residence. On February 7, 1991, he was arrested for drug trafficking. After his sentence, he was turned over to Immigration and Customs Enforcement ("ICE"). On March 1, 2005, an immigration judge ordered Vaquero Bechara removed, and the removal order became final that day. On May 31, 2005, ICE released Vaquero Bechara from custody under terms of supervision pending removal efforts. He has kept his

criminal record clean since his release, and he has complied with all terms of supervision. He has a U.S. citizen wife and child, work authorization, and has owned and operated an air conditioning company for 19 years.

Police detained Vaquero Bechara during a traffic stop on January 25, 2026, and turned him over to ICE. Vaquero Bechara claims that ICE provided him with no documents showing it revoked his release or giving him notice and an opportunity to be heard. He is currently detained at Alligator Alcatraz. Vaquero Bechara challenges the legality of his detention under the Due Process Clause of the Fifth Amendment, *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Immigration and Nationality Act ("INA"), and implementing regulations.

### B. Jurisdiction

Before addressing the merits of Vaquero Bechara's claim, the Court must address its jurisdiction. The respondents argue two sections of the INA strip the Court of jurisdiction over this action. They first point to a provision that bars courts from hearing certain claims. It states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  This jurisdictional bar is narrow.  "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General.  Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged."  *Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

The respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9).  The zipper clause only applies to claims requesting review of a removal order.  *See Madu v. U.S. Attorney Gen.*, 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of

jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Vaquero Bechara does not challenge the commencement of a proceeding, the adjudication of a case, or the execution of his removal order. Nor does he ask the Court to review the removal order. Rather, Vaquero Bechara challenges the legality of his detention under a framework devised by the Supreme Court for district courts to apply. *See Zadvydas*, 533 U.S. at 682 (stating the Court's limitation on post-removal detention "is subject to federal-court review."). A decision in Vaquero Bechara's favor would not impair ICE's ability to execute the removal order. The INA does not strip the Court of jurisdiction over this action.

### C. Legality of Detention

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." *Singh v. U.S. Attorney Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. *Id.* Detention may continue after the removal period, but not indefinitely.

In *Zadvydas*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not

practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." *Id.* at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." *Id* at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. *Id.* Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing.

*Id.* The presumptively reasonable six-month period for detention pending removal commences at the beginning of the removal period. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

The respondents argue Vaquero Bechara's petition is premature because his current detention has not exceeded 180 days. They argue the six-month presumptively reasonable period of detention resets each time a noncitizen is detained. That assumption is inconsistent with *Zadvydas*. It would effectively allow DHS to detain noncitizens indefinitely and avoid judicial scrutiny by releasing and re-detaining them every 180 days. As the Eleventh Circuit recognized, "[t]he Supreme Court's stated rationale for establishing a

presumptively reasonable '6-month period' for detention pending removal supports our conclusion that this period commences at the beginning of the removal period." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n.3 (11th Cir. 2002).

Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Vaquero Bechara has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. ICE has failed to procure travel documents or effect Vaquero Bechara's removal to Cuba or a third country in the 20 years since the removal order. What is more, ICE has provided him no indication Cuba has found him eligible for repatriation or identified a third country willing to take him. The burden thus shifts to the respondents, but they make no attempt at rebuttal.

**D. Conclusion**

The Court finds no significant likelihood Vaquero Bechara will be removed in the reasonably foreseeable future. He is entitled to release from detention under *Zadvydas*. If removal becomes likely in the reasonably foreseeable future, DHS can detain Vaquero Bechara to "assur[e] [his] presence at the moment of removal." *Zadvydas*, 533 U.S. at 680. Vaquero Bechara's procedural challenges to the revocation of his release are moot.

Accordingly, it is hereby

**ORDERED:**

Miguel Vaquero Bechara Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

1. The respondents shall release Vaquero Bechara within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

2. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on February 26, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record